22-689-780-812 Thomas Tupper v. Catholic Charities Thank you, Your Honor, and good morning. My name is Maya Goodell with the law firm of Lattic-Raskin and Clark. I represent plaintiff appellant in this case, plaintiff's appellants. With your permission, I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. This case is about a family's right to have their landlord and management company follow established procedures in federally funded housing so that a family member can live in to help with disability-related needs. Instead of evicting them onto the street for that family member being an unauthorized occupant. Didn't the housing defendants agree to all the requests of Ms. Torres-Thomas Tupper in a settlement agreement that she refused to sign? You'll have to tell me why. Your Honor, we argue that that offer of settlement was inadmissible under Rule 408 in this court's decision in Sheng v. M&T Bank Corporation. The parties were negotiating. Ms. Thomas Tupper's reasonable... So it's inadmissible in the record in this case. That's correct, Your Honor. I can't make myself forget that they offered her the settlement that gave her everything she wanted and she refused to sign it. The offer of settlement was conditioned on a waiver of her due process rights in housing court and that was a concern to her because instead of having to go to housing court and prove their case at a trial, they would have been allowed to just file an affidavit. Did they say in the usual processes? I'm sorry? Wasn't in the usual processes in the settlement agreement that they would have to go through the usual processes? The settlement agreement entitled them to a summary procedure in which they filed an affidavit and received an immediate warrant of eviction. So no, it did not provide for the usual processes. The other point that I would make, Your Honor, and really the policy behind this rule, is that whatever happened between this legal services housing lawyer and her client, the settlement decision was the client's. And lifting the veil on that process, inquiring into those attorney-client discussions and her reasoning in the settlement decision is exactly what Rule 408 and this court's decision in the Sheng case forbid. The reason it's relevant is because it was an effort at accommodation by the defendant, right? Your Honor, that's the central question of liability and what Rule 408 says is that that is not admissible. A settlement offer is not admissible for that purpose. But I'll also note- But part of the agreement didn't- wasn't Mr. Kellett allowed to live in the apartment as a live-in aide for some time? And there were no problems at all, right, with his tenancy? Except that when he finally disclosed his criminal record, he had a conviction that disqualified him, didn't he? He did have a criminal conviction. Is the rule somehow arbitrary and capricious or somehow discriminatory with regard to your client's physical condition or limitations, that they didn't want someone with a drug conviction living in the housing project? The policy that they advance on the criminal conviction is extremely vague and self-contradictory. What we're arguing is that it should have been applied consistent with HUD guidance. I couldn't hear what you said. What we are arguing is that it should have been applied consistent with HUD guidance. That HUD guidance implements dual congressional mandates, right? The Congress has said that HUD housing providers, in other words, housing providers who receive federal funding, have to avoid drug-related criminal activities in federal-funded housing, quote, during the term of the lease, right? That's the congressional statute, 42 U.S.C. 1437F, subparagraph D1B3. That's the statute that the Supreme Court was interpreting in Rutger, and that's the authority for the HUD regulation that the landlord and management are evoking to justify this criminal screening process. But that mandate doesn't require evicting a family onto the street without inquiring into current drug use, without inquiring into evidence of rehabilitation, without asking whether this person deserved a second chance, because the question is about drug-related criminal activity, quote, during the term of the lease. And there is a competing congressional mandate, right, which is the prohibition on policies that impose a disproportional burden or bar meaningful access for people with disabilities, right? That's what this court has explained in Henrietta D. in the recap case. And HUD balanced those conditions. I'm still not clear what accommodation your client wanted that was not provided or offered. The client wanted the accommodation not to be evicted. That'd be what? Wanted the accommodation for the family not to be evicted. That was the accommodation requested, and that's what's challenged here. Offered? They were offered a settlement, a housing court stipulation of settlement, in which they waived due process rights in exchange for not being evicted at that moment, but they could be evicted at some future moment. They accepted her proposal that Gary Kellett could be her in-house aide? Didn't they accept that too, even with his criminal history? Exactly. The accommodation that they're saying was unreasonable because of the criminal record, they actually offered. And I think that that suggests that if discovery had been allowed to proceed in this case, there would be a real question as to whether this policy, you know, was in fact consistently and legally applied. You had your attorney affirmation of 12-17-21 where you say, pursuant to 50-60, no evidence is available, no discovery has been conducted. Wasn't it your responsibility to do discovery when the district judge converted these motions into summary judgment? Why didn't you do discovery? We didn't do discovery because the district court sua sponte converted a motion to dismiss to summary judgment. But once he converts it to summary judgment, you have a full and complete right to do discovery. The district court provided two weeks, which was agreed to. But you did no discovery. Is that correct? We were not allowed any discovery. You were allowed. Weren't you allowed discovery in the two weeks? Or have you ever moved for more time? The parties agreed to four weeks by joint agreement. Okay. And you didn't do discovery in those four weeks? We did not do discovery in those four weeks, no, Your Honor. It was not our understanding that that was permitted. I'm trying to understand why you would complain later on that there's no evidence and when you had the opportunity to do discovery, you didn't take that opportunity. Well, Your Honor, our argument on appeal is that on this record, summary judgment was not warranted. It was not our burden on the summary judgment motion. No, but it was your burden to do discovery once the district court converted the motion to dismiss to a motion for summary judgment. Didn't you have the opportunity then to do discovery? I don't believe so, no, Your Honor. Well, I guess that's not my understanding. I see my time is up. You've reserved a couple minutes for rebuttal. We'll hear from the FLEs first, Ms. Rimondi. Good morning, Your Honors. My name is Hillary Rimondi. I'm the attorney for Catholic Charities and for Theoboman Housing, the appellee conditional cross appellant. I just want to address first the issue of the admissibility of the settlement discussions in the underlying landlord-tenant proceedings. I think that the argument that those discussions are inadmissible here is sort of a red herring. Federal Rule 408 applies to compromises within the disputed action, within the action that we have here. At the time that those settlement discussions occurred, they were exactly what we argued in our brief that they were. They were settlement discussions in the landlord-tenant proceedings by which our client, the petitioner in those proceedings, was offering to compromise its right to evict the tenant in exchange for a stipulation where she agreed to some very basic ongoing monitoring of the person who she was moving into her apartment or had moved into her apartment in violation of both her lease. The counsel says she had to give up some due process rights if she signed this agreement. There was nothing she was giving up in that agreement, Your Honor. What that agreement provided was that she was going to be, they had a pending eviction proceeding. That eviction proceeding was ongoing. She, there's no question that she was in violation of her lease. And I just want to make a point just because Ms. Goodell discusses Mr. Kellett as if he were a member of this family. He was not a member of this family. He was not being evicted. He had no right to be at the premises at all. So when, it's all conflated as if Mr. Kellett's rights were somehow being violated. Mr. Kellett didn't have any rights here. It was Ms. Tupper who was the tenant. It was Ms. Tupper who was approved to be the tenant. Mr. Kellett was just applying to be an aide. And when you apply for an accommodation for a live-in aide, part of that is that you have to follow the agency's procedures. And you have to fill out the proper forms. You have to submit to the background check. You have to do all of these things. I think the record is filled with documentation that the plaintiff was given multiple notices, tremendous due process. And at the end of the day, years later, when we had the eviction proceedings, and they proposed the stipulation of settlement to give the plaintiff everything that she had asked for, the notion that they would, if the stipulation was violated, in other words, if he committed another criminal offense while living there, remember he's not a tenant, he doesn't have tenant rights, that they would be able to go back to court. First, they'd have to give her notice to cure. So she could just tell him to leave. He wasn't a tenant. And she had indicated in her affidavits that she would just tell him to leave. So then she had ten days. Then they would go back to court. Was that the sticking point? Was that a request for accommodation that she made that you denied or your client denied? No, I'm not understanding, Your Honor. In the stipulation, it held that she could tell him to leave. She had the opportunity. They gave her a right to cure. I'm just trying to understand. You said that the stipulation provided for everything that she had asked for. Correct. And then you started talking about the condition that if Mr. Kellett reoffended, then there would be a process for that. And I'm wondering if that is something that she did not want. I'm trying to understand what happened here, what was offered that was not accepted. We don't know, Your Honor, and I think that that's part of the problem, is that through her counsel, I just want to, in the record, we talk about the fact that the stipulation was actually proposed by her counsel. Right. And it was actually in the email that her counsel sent, actually indicated that it was proposed by her counsel and approved by her. So when Thea Bowman actually agreed to all the terms in there and made it even more expansive, in other words, she could have any age she chose, they were given no explanation why she wouldn't sign it, and instead her counsel moved to withdraw and said that they had a fundamental disagreement with their client and after that, Thea Bowman proceeded down the course of the eviction and no further communications were had with the plaintiff. So as far as I know. What I don't understand, how is her objection with regard to, even if it were the case, you disagree that it is, that somehow she didn't want to put herself into a situation where she could be summarily evicted. How is that correlated to not making a reasonable accommodation as to what her physical disabilities were? Because you had agreed to that, correct? Correct. We agreed to the accommodation that she requested. Once she complied with the conditions preceding, which were to have Mr. Kellett fill out the form, pass a criminal conviction, check with- It took him over a year, a year and three months to finally provide the information that you requested. Correct, Judge. Correct, Your Honor. Yes. It took him a very, very long time to provide that information. And when they did, and I just want to- There were 29 adjournments of this eviction proceeding, were there not? Yes, Your Honor. Actually, I think there were 32 court appearances in all. Not quite a rush to judgment. No. It took years. And I think that what you'll see if you look at the transcripts from the underlying proceedings is that the attorney for Thea Bowman represented to each court that he was in front of that, you know, Thea Bowman and Catholic Charities, they're in the business of putting people in housing. This was housing for disabled people. This wasn't, she was not the only disabled person in this housing complex. And that was their business, and that's what they wanted to do, which is why this whole thing took so long and why they tried to offer the accommodation she requested, which in our view, she unreasonably declined. In your practice, in your experience, is it usual for a district court to grant some adjustment without discovery having taken place? Well, I think in this particular instance, we had provided many of the documents and the entire record of what occurred in connection with the motion to dismiss, which is why the judge decided to convert it. Then he gave us additional opportunities and staying in management, the co-defendant submitted a lot of documentation about the equal application of these rules. And, you know, the plaintiff, I don't think that there was any material fact dispute or any facts that the plaintiff could admit that would change the record of what occurred here. And the district judge in his discretion determined that a summary judgment was appropriate, and obviously we agree. And yet counsel in her affirmation of 1221 says evidence is not available, and she didn't have discovery. The record was pretty well established, I think, when we made the summary judgment motion, and what we did when we supplemented it was we submitted all the information that the plaintiff had indicated. For example, she made an allegation in her affirmation about several individuals who she claimed were not subjected to the same criminal history check, and staying in their supplemental briefing provided evidence that that's not, in fact, true. So I think that all the material facts were addressed and that summary judgment was appropriate. Thank you. Thank you, counsel. Thank you. We'll hear from Ms. Korman. Thank you. Good morning. Cheryl Korman on behalf of the Stannin Group. We reached most of the issues in connection with whether or not this was a reasonable accommodation through co-counsel's arguments. So what I'd just like to focus on is just that there's a slight difference between the Stannin Group and Taya Bowman in terms of what transpired here. Stannin was simply the management company. We did not have any discretion to accept or reject an applicant. We just went through the processes and procedures that were necessary to service our clients. Only Taya Bowman had, as the landlord, had the right and the discretion to depart from the established HUD regulations and guidelines. And once Mr. Kellett failed the background check, any dialogue between the plaintiff and the continued request to have Kellett remain was between Taya Bowman and the plaintiff, and Stannin did not participate and was not a party to any of those discussions. It was your request for all his background information that triggered this, wasn't it? Yes, we filed those papers as part of our job as the management company, but we made absolutely no decisions as to whether or not he should be allowed to stay. But clearly, when we look at the record here, that there was clearly an interactive process. There was consistent dialogue back and forth as to what Mr. Kellett needed to provide in order to be able to remain at the premises, which actually he never should have been in in the first place because he was never granted the authority to be there. But nevertheless, the parties entered into discussions to try to accommodate plaintiff's requests and have this person stay there. It took months and months and months before any of the appropriate documentation was even filed. And then when it ultimately was filed, we see that he lied on his application, said he did not have a criminal conviction for drugs. And in fact, if we look at the HUD regulations, it says a recent drug conviction would be means to say somebody is not permitted to stay there. So this is a recent drug conviction. It was within one year of the time that he actually moved into the premises illegally. And she was given notices consistently that he was not allowed to be there while they were going through this discussion, November of 2015, January 2016. And then if you look at what happened in May of 2016, we discussed how she was given all of the documents that she needs. Here's a document list of what you need to provide and what Mr. Kellett needs to bring to the interview. But until he's approved in the interview, he's not allowed to stay there. That's, I believe, page 408 of the record. So consistently, they were flouting. This was a serial lease violator. There are so many instances of violations of this lease, and these parties bent over backwards to try to afford every accommodation that was requested. And in terms of any purported requested discovery, if you look at what was actually being asked for, none of it is relevant to the legal arguments that are presented here. She said that she needs records concerning Kellett's residence and conduct in the community. That's simply not relevant. Alleged drug policy and application, that's all here. We know what the HUD regulations and the TAEA Bowman Selection Plan provide. Emails about reasonable accommodation requests, well, if there are emails back and forth, there's no discovery that's necessary. Plaintiff's counsel would have those emails. Communications about other people's reasonable accommodations, clearly the record is replete with that information. And in fact, on appeal, that disparate treatment argument has been abandoned. So really, we're looking at people here that bent over backwards to try to accommodate this individual. When you look at the actual stipulation, yes, we required that he not be a repeat drug offender and that she continue with information of medical necessity. And if she did not comply with those two requirements, the parties didn't want to go through another two or three years of eviction proceedings with the serial lease violator. And she was required to get notice of any issues if there were any of these violations. And then the parties would go to court and the proceedings would continue. Was she finally evicted or was she still in the house? Oh, no, she was evicted in, I believe, 2018, October of 2018, I believe. I could verify that date, but it's around that time. So unless the court has any questions, I'll rest on my brief. Thank you. Thank you very much. Counsel, I know this is totally extra record, but where is she living now? She's in an apartment which is Section 8 funded, but which is not accessible. So part of the request in the Second Amendment complaint is injunctive relief as well as monetary damages. I just wanted to address a couple of issues. First of all, to Judge Park's question, Ms. Thomas Tupper's affidavit says that she would agree to all of the conditions and there's no contrary evidence in the record. So if this stipulation had no legal effect, as the landlord and management argue, why evict her because she didn't sign it? What did you just say? Say that again. Ms. Thomas Tupper affirms in her affidavit that she did agree to all of these conditions, to the recertification. So why didn't she sign the document? Because she didn't want to waive her housing rights, because it did have a legal effect. Well, I'm looking at it. I took the time to go back and look at the stipulation. What the stipulation says is that if he gets another conviction that violates HUD regulations, he has to vacate the premises. He has to vacate the premises, or they get to go back to housing court and file a piece of paper, not prove their case at a trial, but file a piece of paper. Sorry? And get a warrant of eviction. They can also do that for things completely unrelated to this accommodation request under the stipulation. But this is part of the stipulation that you just told me she'd agreed to. She obviously did not agree to all the provisions of the stipulation. She didn't agree to the waiver of her due process rights, but she did agree to the conditions on the reasonable accommodation. With all due respect, you just stood there and told us that she had agreed to all the provisions of the stipulation, which I found incredibly curious, because she didn't sign it. And so I just read to you part of it, and now you tell me she didn't agree to that. So with all due respect, she did not agree to the stipulation. She did not agree to the stipulation. She did agree to the conditions placed on the reasonable accommodation. All right. You're slicing me up pretty good, Counsel. Thank you, Counsel. Thank you. Thank you all. We'll take the case under advisement.